**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TENG KUE,

      Petitioner,                   Civil No. 2:10-CV-11925
                                    HONORABLE NANCY G. EDMUNDS
v.                              UNITED STATES DISTRICT JUDGE

THOMAS BIRKETT,

      Respondent,
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

      Teng Kue, ("petitioner"), currently residing in Warren, Michigan after having been discharged from his sentence by the Michigan Department of Corrections, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [1]  In his *pro se* application, petitioner challenges his conviction for third-degree criminal sexual conduct, M.C.L.A. 750.520d(1)(a).  For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

---

[1]  The Michigan Department of Corrections' [M.D.O.C.] Offender Tracking Information System (OTIS), which this Court is permitted to take judicial notice of, *See Ward v. Wolfenbarger,* 323 F. Supp. 2d 818, 821, n. 3 (E.D. Mich. 2004), indicates that petitioner was discharged from his sentence on June 17, 2012 and is no longer in custody.  The language of §§ 2241(c)(3) and 2254(a) require that a habeas petitioner be "in custody" under the conviction or sentence under attack at the time that a habeas petition is filed in the federal court. *See Maleng v. Cook ,* 490 U.S. 488, 490-91 (1989).  Whether a petitioner is in custody for purposes of the habeas corpus statute is determined at the time that the petition is filed. *Sevier v. Turner,* 742 F. 2d 262, 268 (6th Cir. 1984).  Because petitioner was in prison at the time he filed his petition, he satisfies the "in custody" requirement of §§ 2241(c)(3) and 2254(a), in spite of his subsequent discharge.  Once federal jurisdiction has attached to a habeas petition in federal district court, "it is not defeated by the release of the petitioner prior to completion of proceedings" on his or her habeas application. *Carafas v. LaVallee,* 391 U.S. 234, 238 (1968).

## I.  Background

Petitioner and his co-defendant Toua Kue were both charged with one count of first-degree criminal sexual conduct and four counts of third-degree criminal sexual conduct. Petitioner entered into a plea agreement with the Wayne County Prosecutor, in which he agreed to plead guilty to one count of third-degree criminal sexual conduct, in exchange for dismissal of the remaining charges, including the first-degree criminal sexual conduct charge, which carried a sentence of up to life in prison.   The parties also agreed that petitioner would receive a sentence of six to fifteen years in prison.  Prior to pleading guilty, petitioner indicated that he was satisfied with the services of his attorney.  Petitioner's co-defendant entered into the identical plea agreement on the same date. (Tr. 3/31/04, pp. 5-8).  Prior to pleading guilty, the judge advised petitioner of the constitutional rights that he would be waiving by pleading guilty.  Petitioner acknowledged that by pleading guilty, he would be giving up his right to later allege that his plea was the result of any threats or promises which had not been placed on the record or that it was not his choice to plead guilty.  Petitioner further indicated that no one had threatened, coerced, or pressured him to plead guilty and that he was entering the plea freely and voluntarily, as well as knowingly and intelligently.(*Id.,* pp. 9-13).   In making out a factual basis for the plea, petitioner admitted to having sex with his fourteen year old cousin. (*Id.,* pp. 14-15).

Prior to sentencing, petitioner moved to withdraw his guilty plea with new counsel. The trial judge heard the motion to withdraw on April 14, 2004. [2]  Petitioner claimed that his first trial attorney, Cyril Pessina, had pressured petitioner into pleading guilty by warning

---

[2]  The transcript for the April 14, 2004 hearing has been erroneously docketed as a transcript for April 14, 2005. [See this Court's Dkt. # 8-6].

2

him that if petitioner chose to go to trial, this would anger the judge and lead to petitioner being sentenced to 25 years' imprisonment. (Tr. 4/14/04, pp. 4-6).  Petitioner further alleged that he felt great pressure to plead guilty by his Hmong community. (*Id.,* p. 10). Petitioner's new attorney admitted that he never received confirmation from Attorney Pessina about the allegation that he had pressured petitioner into pleading guilty. (*Id.,* pp. pp. 5-7, 16-17).  The judge denied the motion to withdraw because the unsubstantiated allegations made by petitioner against Attorney Pessina were directly contradicted by petitioner's answers during the plea hearing, in which petitioner denied that he had been pressured, threatened, or coerced into pleading guilty. (*Id.,* pp. 15-19).

On April 23, 2004, petitioner was sentenced to six to fifteen years in prison, in accordance with the sentencing agreement.

Petitioner filed an application for leave to the Michigan Court of Appeals, which was denied. *People v. Kue*, No. 259062 (Mich. Ct. App January 5, 2005).  Petitioner never appealed this denial of leave to appeal to the Michigan Supreme Court.

Petitioner, through counsel, subsequently moved a second time in the trial court to withdraw his guilty plea based on the same allegations that he had raised in his earlier motion to withdraw.  Petitioner further claimed in his second motion to withdraw that his plea was coerced because it was a "package deal" which had required both petitioner and his co-defendant to accept the plea agreement in order for each defendant to be able to avail himself of the plea bargain.  Petitioner further alleged that his plea was illusory because the minimum sentence he agreed to was much greater than the sentencing guidelines range for first-degree criminal sexual conduct would have been had petitioner been found guilty of this charge after trial.

3

The trial judge held a hearing on the motion to withdraw on May 20, 2005. After hearing argument from the parties, the trial judge ruled that petitioner had not demonstrated sufficient pressure or coercion to counter petitioner's statements during the plea taking proceeding that he was freely and voluntarily entering into his plea of guilty without pressure, coercion, or threats. The trial judge also denied petitioner's motion for an evidentiary hearing on the ineffective assistance of counsel claim. (Tr. 5/20/05, pp. 38-44).

Petitioner appealed the denial of this motion. Both appellate courts denied petitioner leave to appeal pursuant to M.C.R. 6.508(D). *People v. Kue*, No. 263246 (Mich. Ct. App. December 6, 2005); *lv den.* 475 Mich. 885, 715 N.W.2d 882 (2006).

Petitioner, through counsel, subsequently filed a post-conviction motion for relief from judgment, which was denied by the trial court pursuant to M.C.R. 6.508(D)(3). *People v. Kue,* No. 03-013968-02 (Wayne County Circuit Court, November 25, 2008). The Michigan Court of Appeals subsequently denied petitioner leave to appeal pursuant to M.C.R. 6.508(D). *People v. Kue,* No. 291918 (Mich.Ct.App. August 27, 2009). The Michigan Supreme Court, however, denied petitioner's application for leave to appeal pursuant to M.C.R. 6.502(G), which prohibits successive motions for relief from judgment in the absence of new evidence or a retroactive change in the law. *People v. Kue*, 485 Mich. 1125, 779 N.W.2d 802 (2010).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner's conviction violates his State and federal constitutional rights because it was coerced by defense counsel and was thus involuntary.

II. Petitioner's State and federal constitutional rights were violated when he was coerced into pleading guilty.

III. Petitioner Kue must be allowed to withdraw his guilty plea because he

4

was not advised of all of the relevant consequences, rendering his plea illusory, unknowing and involuntary, in violation of federal and State law governing sentencing.

IV.  Petitioner's motion for relief from judgment should have been granted and resentencing ultimately ordered because he was deprived of the right to review his presentence report at a reasonable time before sentencing, in violation of federal and State law governing sentencing.

V.  The circuit court's failure to assure petitioner the opportunity to review the presentence report in accord with Michigan law prior to sentencing rendered petitioner's right of allocution meaningless and resulted in a fundamentally unfair sentencing that violated due process.

VI.  Trial counsel was ineffective for failing to insure that his client had an opportunity to review the presentence report at a reasonable time before the day of sentencing, violating petitioner's Sixth Amendment rights.

VII.  Petitioner established entitlement to relief under M.C.R. 6.508 et. seq.

VIII.  Petitioner was denied his Sixth and Fourteenth Amendment right to the effective assistance of trial counsel.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question

5

of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

6

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,*
131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not
completely bar federal courts from relitigating claims that have previously been rejected
in the state courts, it preserves the authority for a federal court to grant habeas relief only
"in cases where there is no possibility fairminded jurists could disagree that the state
court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section
2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in
the state criminal justice systems,' not a substitute for ordinary error correction through
appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J.,
concurring in judgment)).   Thus, a "readiness to attribute error [to a state court] is
inconsistent with the presumption that state courts know and follow the law." *Woodford,*
537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner
is required to show that the state court's rejection of his claim "was so lacking in
justification that there was an error well understood and comprehended in existing law
beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III.  Discussion

**A.  The procedural default issue.**

Respondent contends that petitioner's claims are procedurally defaulted for two
different reasons.  Respondent first claims that a number of petitioner's claims are
defaulted because he raised them in his first post-conviction motion for relief from
judgment and failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for
failing to raise them on his direct appeal.  Respondent contends that petitioner's remaining
claims are defaulted because he raised them in a second motion for relief from judgment

7

and was denied relief on the ground that M.C.R. 6.502(G) prohibits the filing of a successive motion for relief from judgment unless there is new evidence or a retroactive change in the law.

Petitioner argues that he did not file his second motion to withdraw his guilty plea as a motion for relief from judgment and in fact, the trial court did not refer in his orders or on the record to the motion as being one filed pursuant to M.C.R. 6.500, *et. Seq.* Petitioner contends that the Michigan Court of Appeals and the Michigan Supreme Court erred in subsequently recharacterizing his motion as a motion for relief from judgment and thus erred in denying him relief pursuant to M.C.R. 6.508(D), Michigan's post-conviction statute. Because this motion was not a motion for relief from judgment, petitioner further argues that his first motion for relief from judgment that he filed in 2008 was improperly characterized as a second motion for relief from judgment by the Michigan Supreme Court in its order denying petitioner leave to appeal pursuant to M.C.R. 6.502(G).

This Court notes that procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir.2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, in light of the confusion over how the trial and appellate courts treated each of petitioner's post-trial motions differently, the Court finds that the interests of judicial economy are best served by addressing the merits

8

of petitioner's claims.

**B.  Claims # 1, # 2 and # 3.  The involuntary guilty plea claims.**

In his first, second, and third claims, petitioner claims that he should be permitted to withdraw his guilty plea because he did not enter into it knowingly, voluntarily, or intelligently.

At the outset, petitioner has no federal constitutional right or absolute right under state law to withdraw his guilty plea. *See Adams v. Burt,* 471 F. Supp. 2d 835, 843 (E.D. Mich. 2007)(internal citations omitted).  Therefore, unless the plea violated a clearly-established constitutional right, whether to allow the withdrawal of a criminal defendant's guilty plea is discretionary with the state trial court. *See Hoffman v. Jones,* 159 F. Supp. 2d 648, 655 (E.D. Mich. 2001).

A plea of guilty must be knowingly and voluntarily made.  The defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Correctional Institution*, 927 F. 2d 256, 257 (6th Cir. 1991).  The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he is pleading guilty. *King v. Dutton*, 17 F. 3d 151, 154 (6th Cir. 1994).  When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F. 2d 324, 326 (6th Cir. 1993).  The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness.  Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.*  Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption that his or her guilty plea, as evidenced by

9

the plea colloquy, is valid. *Myers v. Straub,* 159 F. Supp. 2d 621, 626 (E.D. Mich. 2001).

Petitioner first contends that he was coerced into pleading guilty by his first trial attorney, who warned him that he would make the judge mad by taking the case to trial, that all the evidence was against him, and that he would be sentenced to 25 years to life if he went to trial.  Petitioner's bare claim that he was coerced into pleading guilty is insufficient to overcome the presumption of verity which attaches to petitioner's statements during the plea colloquy, in which he denied that any threats or coercion had been used to get him to enter his plea. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 750-51 (E.D. Mich. 2005).

Petitioner next contends that his plea was involuntary because it was the product of a "package deal" that had been offered to him and his co-defendant, which required each defendant to plead guilty in order for the other defendant to be able to avail himself of the plea bargain.  Petitioner alleges that because of this requirement, he was coerced by his co-defendant and his co-defendant's family into pleading guilty.

A prosecutor "may properly condition any plea in a case upon all defendants pleading guilty." *U.S. v. Carpenter*, 25 Fed. Appx. 337, 344 (6th Cir. 2001)(citing *United States v. Usher*, 703 F.2d 956, 959 (6th Cir. 1983)(finding no justification for withdrawal of a guilty plea where the ability of a defendant's wife to plead was conditioned upon the defendant's own plea)).  At the time of his plea, petitioner denied that he had been coerced into pleading guilty.  Neither the trial court record nor caselaw supports petitioner's claim that this "package deal" rendered his plea involuntary. *Id.*

Petitioner next alleges that his plea was involuntary because he was not advised of the elements of third-degree criminal sexual conduct.

10

It is true that where a defendant pleads guilty to a crime without having been informed of the crime's elements, the voluntary, knowing, and intelligent standard for a guilty plea is not met and the plea is invalid. *See Bradshaw v. Stumpf,* 545 U.S. 175, 183 (2005). However, a defendant is presumed to have been informed adequately by his defense counsel of the criminal charge to which he is pleading guilty, even when the trial court record is devoid of an explanation of the charge by the judge or of a representation by defense counsel that the nature or the elements of the charge have been explained to the defendant. *See Berry v. Mintzes,* 726 F. 2d 1142, 1147 (6th Cir. 1984). "The presumption is particularly appropriate where, as here, trial counsel was an experienced criminal lawyer." *Id.* Petitioner has presented no evidence to this Court to negate this presumption, thus, he is not entitled to habeas relief on this portion of his claim.

Petitioner next contends that his plea should be set aside because it was illusory. A plea agreement is entered into involuntarily and unknowingly if the defendant is unaware that the prosecution's promise is illusory. *See United States v. Randolph*, 230 F.3d 243, 250-51 (6th Cir. 2000).

Petitioner was originally charged with one count of first-degree criminal sexual conduct, which carries up to life in prison. Petitioner was also charged with four counts of third-degree criminal sexual conduct. Petitioner was permitted to plead guilty to one count of third-degree criminal sexual conduct, which carries up to fifteen years in prison. In exchange for pleading guilty to this charge, the remaining charges, including the first-degree criminal sexual conduct charge, were dismissed. The prosecutor also agreed that petitioner would receive a sentence of six to fifteen years. Although petitioner argues that his plea was illusory because he claims that his sentencing guidelines on the original first-

11

degree criminal sexual conduct charge were only 27 to 45 months, at the hearing on the motion to withdraw the plea, the judge several times voiced skepticism that the guidelines would be that low, at one point indicating that he found it "unimaginable" that the sentencing guidelines were only 27 to 45 months. (Tr. 5/20/05, pp. 12-16). The judge questioned whether this guideline range, which had been worked out by petitioner's appellate counsel, took into account the fact that there were multiple actors and multiple sexual penetrations.(*Id.,* p. 15). The judge noted that had petitioner been convicted of first-degree criminal sexual conduct, he could still set the maximum sentence regardless of the guidelines range for the minimum sentence. [3] (*Id.,* p. 16). The assistant prosecutor at the plea withdrawal hearing noted that current defense counsel's scoring of the guidelines failed to take into account that petitioner had a prior criminal record. (*Id.,* p. 18). The judge and the prosecutor both noted that the guidelines had been scored based upon the minimal facts elicited from petitioner at the plea but that the guidelines could have been scored higher after a trial if additional damaging information had come out at the trial that was not made known at the guilty plea. (*Id.,* pp. 29-30).

In the present case, petitioner was able to get his maximum sentencing exposure reduced from life imprisonment to fifteen years. The plea bargain also lead to the dismissal of additional charges which also could have increased petitioner's sentencing guidelines range on the minimum sentence. Petitioner also received a sentence agreement of six to fifteen years imprisonment. In particular, in light of the fact that sex

---

[3]   Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255, n. 7; 666 N.W. 2d 231 (2003)(citing M.C.L.A. 769.34(2)). The maximum sentence is not determined by the trial judge but is set by law. See *People v. Claypool,* 470 Mich. 715, 730, n. 14; 684 N.W. 2d 278 (2004)(citing M.C.L.A. 769.8).

12

offenders in Michigan often are required to serve their maximum sentence, *See infra,* the reduction of petitioner's maximum sentencing exposure from life imprisonment to fifteen years in prison provided petitioner a tangible benefit.  Because petitioner derived a real benefit from his plea and sentencing bargain in this case, his plea was not illusory and he is therefore not entitled to habeas relief on his claim. *See McAdoo v. Elo,* 365 F. 3d 487, 498 (6th Cir. 2004).

Petitioner finally claims that his plea was involuntary because he was not advised by the court that the Michigan Parole Board routinely denies parole to sex offenders and that petitioner would likely have to serve more than his minimum sentence.  Petitioner points to evidence which suggests that the Michigan Parole Board denies parole to many sex offenders, sometimes requiring them to serve their maximum sentences.

A defendant need only be made aware of the direct consequences of a guilty plea for the plea to be made voluntarily and intelligently; a trial court is under no obligation to inform a defendant of all possible collateral consequences of a plea. *King v. Dutton,* 17 F. 3d at 153.  The United States Supreme Court has "never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).  The Sixth Circuit has repeatedly held that parole eligibility is not a direct consequence of a plea of which a defendant must be advised. *See Franks v. Lindamood,* 401 Fed. Appx. 1, 6 (6th Cir. 2010); *King v. Dutton,* 17 F. 3d at 154; *Brown v. Perini*, 718 F. 2d 784, 788 (6th Cir. 1983).  Any misunderstandings that petitioner might have had about when he would be paroled from his third-degree criminal sexual conduct conviction would not render his plea involuntary. *See McAdoo,* 365 F. 3d at 495.

13

Petitioner is not entitled to habeas relief on his first, second, or third claims.

### C. Claims # 4 and # 5. The sentencing claims.

In his fourth and fifth claims, petitioner contends that he was deprived of due process because he was not given an opportunity to review the pre-sentence report prior to sentencing.

There is no federal constitutional right to a pre-sentence investigation and report. *See Bridinger v. Berghuis,* 429 F. Supp. 2d 903, 909 (E.D. Mich. 2006); *Allen v. Stovall*, 156 F. Supp. 2d 791, 797 (E.D. Mich. 2001). Therefore, the mere presence of hearsay or inaccurate information in a pre-sentence report does not constitute a denial of due process so as to entitle a petitioner to habeas relief. *Allen,* 156 F. Supp. 2d at 797. Moreover, because the federal constitution does not require a state court to prepare or consider a pre-sentence report, petitioner had no federal constitutional right to review any such report prior to sentencing. *Bridinger,* 429 F. Supp. 2d at 909. To the extent that petitioner claims that the trial court failed to correct the inaccuracies in his pre-sentence report, in violation of M.C.R. 6.429, this would be noncognizable in federal habeas review, because it involves an issue of state law. *See e.g. Koras v. Robinson,* 257 F. Supp. 2d 941, 955 (E.D. Mich. 2003); *aff'd in part and rev'd in part on other grds,* 123 Fed. Appx 207 (6th Cir. 2005).

More importantly, even where there is an alleged factual inaccuracy in a pre-sentence report, a court need not resolve the dispute when the information is not relied on in arriving at the sentence that was imposed. *See Warren v. Miller,* 78 F. Supp. 2d 120, 131 (E.D.N.Y. 2000). Although a criminal defendant possesses a constitutional right not to be sentenced on the basis of "misinformation of constitutional magnitude," *See Roberts*

14

*v. United States*, 445 U.S. 552, 556 (1980), in order to prevail on a claim that a trial court relied on inaccurate information at sentencing, a habeas petitioner must demonstrate that the sentencing court relied upon this information and that it was materially false. *See Siebert v. Jackson*, 205 F. Supp. 2d 727, 731 (E.D. Mich. 2002).

In the present case, there is no evidence that the trial court relied on the allegedly incorrect information contained within the pre-sentence report in sentencing petitioner, particularly where the parties had agreed that petitioner would receive a sentence of six to fifteen years in prison.  A habeas petitioner is not entitled to relief on his claim that a pre-sentence investigation report contained inaccurate information where there is no indication that the sentencing judge relied on this information in sentencing the petitioner. *See Draughn v. Jabe,* 803 F. Supp. 70, 80 (E.D. Mich. 1992).

To the extent that petitioner claims that his inability to review the pre-sentence report denied him the right to meaningful allocution, he would not be entitled to habeas relief.  There is no constitutional right to allocution under the United States Constitution. *Pasquarille v. United States*, 130 F. 3d 1220, 1223 (6th Cir. 1997)(citing to *Hill v. United States*, 368 U.S. 424, 428 (1962)).  Therefore, a trial court's failure to afford a defendant the right to allocution raises neither a jurisdictional or constitutional error cognizable on habeas review. *Scrivner v. Tansy*, 68 F. 3d 1234, 1240 (10th Cir. 1995); *See also Cooey v. Coyle,* 289 F. 3d 882, 912 (6th Cir. 2002)(declining to issue certificate of appealability on denial of allocution claim).  Petitioner is not entitled to relief on his fourth and fifth claims.

**D.  Claims # 6 and # 8.  The ineffective assistance of counsel claims.**

In his sixth and eighth claims, petitioner alleges that he was denied the effective

15

assistance of counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles*

16

*v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner.  *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

> Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

> In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

> Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast

17

doubt" on a guilty plea and a sentence that took place" nine years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

For purposes of judicial clarity, the Court will discuss petitioner's eighth claim first because it involves issues concerning the guilty plea. Petitioner first alleges that his initial trial attorney failed to adequately research the sentencing guidelines in this case before advising petitioner to plead guilty.

The Supreme Court has noted that:

Acknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function. Those principles are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place. Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

*Premo v. Moore,* 131 S. Ct. 733, 741 (2011).

The Supreme Court further admonished:

These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how

18

searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. AEDPA compounds the imperative of judicial caution.

Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant "to escape rules of waiver and forfeiture,". Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Premo,* 131 S. Ct. at 741-42 (internal citations and quotations omitted).

Moreover, in order to satisfy the prejudice requirement for an ineffective assistance of counsel claim in the context of a guilty plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty, but would have insisted on going to trial. *Premo,* 131 S. Ct. at 743 (citing *Hill v. Lockhart*, 474 U.S. at 58-59. An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill,* 474 U.S. at 59. The Sixth Circuit has interpreted *Hill* to require a federal habeas court to always analyze the substance of the habeas petitioner's underlying claim or defense to determine whether but for counsel's error, petitioner would likely have gone to trial instead of pleading guilty. *See Maples v. Stegall,* 340 F. 3d 433, 440 (6th Cir. 2003). The petitioner must therefore show a reasonable probability that but for counsel's errors, he or she would not have pleaded guilty, because there would have been a reasonable chance that he or she would have been acquitted had he or she insisted on going to trial. *See Garrison v. Elo,* 156 F. Supp. 2d 815, 829

19

(E.D. Mich. 2001).  A habeas petitioner's conclusory allegation that, but for an alleged attorney act or omission he or she would not have pleaded guilty, is therefore insufficient to prove such a claim. *Id.*  The test of whether a defendant would have not pleaded guilty if he or she had received different advice from counsel "is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. U.S.*, 668 F. 3d 368, 373 (6th Cir. 2012)(quoting *Padilla v. Kentucky*, 130 S. Ct. at 1485).

Other than conclusory allegations, petitioner has failed to show a reasonable probability that he would have been acquitted had he gone to trial.  Because petitioner has not established that he had a viable defense in this case, he has failed to show that counsel was ineffective in advising him to plead guilty.

Petitioner next claims that his first trial counsel was ineffective for failing to challenge the validity of his guilty plea on the ground that it had been coerced.  This Court has already determined that petitioner knowingly and intelligently pleaded guilty to the charge with a full awareness of the consequences of his plea.  In light of the fact that petitioner's plea was knowingly and voluntarily made, a challenge to the validity of petitioner's guilty plea would not have prevailed, therefore, counsel was not ineffective in failing to challenge the voluntariness of petitioner's guilty plea. *See Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 651-52 (E.D. Mich. 2002).

Petitioner next contends that his second trial attorney performed ineffectively at the first motion to withdraw the guilty plea by failing to obtain an affidavit from his first attorney

20

or to present other evidence that would corroborate petitioner's claim that his first trial attorney coerced him into pleading guilty with threats of lengthy imprisonment if he went to trial.

Petitioner is unable to show that he was prejudiced by his second trial attorney's performance at the first plea withdrawal hearing. Petitioner has never presented to either the state courts or this Court any evidence in support of his claim that his trial counsel coerced him into pleading guilty, even though petitioner was given an opportunity to file a second motion to withdraw his guilty plea. The trial judge rejected petitioner's second motion to withdraw his guilty plea because petitioner had never presented any evidence at this second hearing to substantiate his claim. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). By failing to present any evidence to the state courts in support of his ineffective assistance of claim, the petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F. 3d at 893)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)). In addition, because petitioner has failed to show any reasonable likelihood that his motion to withdraw his guilty plea would have been granted, petitioner was not prejudiced by his second attorney's handling of the first motion to withdraw his guilty plea. *See e.g. Franks v. Lindamood,* 401 Fed. Appx. at 7.

In his sixth claim, petitioner claims that his second trial counsel was ineffective for failing to assure that petitioner was able to review the pre-sentence report prior to sentencing.

Although the Supreme Court has never expressly extended *Strickland* to noncapital sentencing cases, the Sixth Circuit has applied it in that context with regards to reviewing federal convictions on direct appeal. *See United States v. Stevens*, 851 F. 2d 140, 145 (6th Cir. 1988).  However, the AEDPA standard of review found in 28 U.S.C. § 2254 (d)(1) prohibits the use of lower court decisions in determining whether the state court decision is contrary to, or an unreasonable application of, clearly established federal law. *Miller v. Straub,* 299 F. 3d 570, 578-579 (6th Cir. 2002).  The Ninth Circuit has noted, "[W]hen the Supreme Court established the test for ineffective assistance of counsel claims in *Strickland*, the [Supreme] Court expressly declined to 'consider the role of counsel in an ordinary sentencing, which ... may require a different approach to the definition of constitutionally effective assistance.'" *Cooper-Smith v. Palmateer*, 397 F. 3d 1236, 1244 & n. 39 (9th Cir. 2005)(quoting *Strickland,* 466 U.S. at 686).  Because the Supreme Court has not decided what standard should apply to ineffective assistance of counsel claims in the noncapital sentencing context, there is no clearly established federal law regarding ineffective assistance of counsel claims in noncapital sentencing cases, so as to provide petitioner with a basis for habeas relief on his claim. *Id., See also Davis v. Grigas,* 443 F. 3d 1155, 1158 (9th Cir. 2006).

Assuming that *Strickland* applies to noncapital sentencings, petitioner is unable to establish that he was prejudiced by any alleged failure by counsel to review the pre-sentence report with him.  Any error by a defense counsel in failing to read and review a pre-sentence investigation report with a defendant prior to sentencing does not constitute ineffective assistance of counsel in the absence of any indication that the outcome of the

sentencing would have been different. *See Siebert v. Jackson*, 205 F. Supp. 2d at 734-35. In light of the fact that petitioner was sentenced to six to fifteen years in accordance with the plea and sentencing agreement, petitioner is unable to establish that the outcome of the sentencing would have been different had counsel reviewed the pre-sentence report with him prior to sentencing.  Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

### E.  Claim # 7.  The post-conviction motion claim.

Petitioner lastly complains that the state courts improperly denied his post-conviction motion or motions.

Petitioner's claim that the Michigan courts wrongfully denied him post-conviction relief is non-cognizable.  This Court notes that "[t]he Sixth Circuit consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer,* 484 F. 3d 844, 853 (6th Cir. 2007).  Thus, a federal habeas corpus petition cannot be used to mount a challenge to a state's scheme of post-conviction relief. *See Greer v. Mitchell,* 264 F. 3d 663, 681 (6th Cir. 2001).  The reason for this is that the states have no constitutional obligation to provide post-conviction remedies. *Id.* (citing to *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987)).

### IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that

23

reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims. *See Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).  The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V.  <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

<pre>
                              s/ Nancy G. Edmunds
                              NANCY G. EDMUNDS
                              UNITED STATES MAGISTRATE JUDGE
</pre>

Dated:  May 17, 2013

24

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on May 17, 2013.

Teng Kue
20838 Cyman Ave
Warren, MI 48091-4323

s/Johnetta M. Curry-Williams
Case Manager